UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:07CV377-R

*Electronically Filed*

| | |
|---|---|
| ALEXANDER M. SAY | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN ADAMS, *et al.* | ) |
| | ) |
|     Defendants. | ) |

\*\* \*\* \*\* \*\* \*\*
RESPONSE OF JOHN (JACK) ADAMS
TO MOTION FOR PRELIMINARY INJUCTION
\*\* \*\* \*\* \*\* \*\*

INTRODUCTION

Defendant, Kentucky State Police (KSP) Commissioner John (Jack) Adams (Commissioner Adams), respectfully submits his Response in opposition to Plaintiff's Motion for Preliminary Injunction. For the following reasons, Commissioner Adams states that Plaintiff cannot establish that he is likely to succeed on the merits, he cannot establish irreparable injury, and the equities otherwise do not favor the issuance of a preliminary injunction.

STATEMENT OF FACTS

This case presents a constitutional challenge to the requirement that applicants for a Kentucky concealed carry deadly weapons (CCDW) license be a United States citizen. The challenged provision is set forth in KRS 237.110(4)(b)(1), as amended on July 12, 2006, by Kentucky House Bill 290. Prior to July 12, 2006, Kentucky did not require United States citizenship as a prerequisite for obtaining a CCDW license.

The change requiring citizenship was implemented as part of House Bill 290 in conjunction with a new requirement placed upon KSP to conduct federal criminal history background checks *vis-a-vis* the National Instant Criminal Background Check System (NICS). See KRS 237.110(3)(b). Upon information and belief, [1] the impetus behind requiring KSP to conduct federal criminal history checks was to gain federal approval to allow for the use of Kentucky CCDW licenses to be able to purchase firearms from a federally licensed gun dealer while foregoing the otherwise required telephonic NICS criminal history inquiry mandated by the Brady Handgun Violence Prevention Act (18 U.S.C. § 921, *et seq.*). Prior to July 12, 2006, Kentucky CCDW licenses were not recognized as valid for waiver of the required background check for firearms purchases, as KSP did not perform federal NICS background checks on CCDW applicants prior to July 12, 2006.

One of the additional prerequisites for Kentucky CCDW license eligibility other than United States citizenship is that an applicant must not be ineligible to lawfully possess a firearm under federal law. See KRS 237.110(4)(a). Federal law prohibits certain aliens from possessing firearms, including aliens illegally in the United States and aliens (with certain exceptions) who enter the United States under a nonimmigrant visa. See 18 U.S.C. § 922(g)(5). Upon information and belief, a federal NICS background inquiry conducted with respect to aliens requires not only a criminal history check, but an "Illegal Alien Query" (IAQ) conducted through federal Immigration and Customs Enforcement records to determine an alien's legal status within the United States.

KSP will have to update its electronic database software in order to facilitate IAQ checks for alien CCDW applicants. Further, if KSP were required to conduct such checks on aliens in

---

[1] Due to time constraints in responding in this matter, undersigned counsel have not reviewed in depth the available legislative historical materials relating to House Bill 290 to see if any

2

conjunction with an application for a CCDW license, KSP would have to amend its forms and change it record check procedures in order to conduct the additional IAQ check required for aliens. Short of conducting manual case-by-case background checks on aliens, KSP would likely require a minimum of 180 days in order to implement the necessary procedures to conduct alien CCDW background checks. If the Court directs an evidentiary hearing, KSP will produce a witness familiar with CCDW records check policies and procedures to testify to these matters.

ARGUMENT

A. Preliminary Injunction Standard

The considerations a court must undertake in evaluating a motion for a preliminary injunction have been summarized by the Sixth Circuit as follows:

> The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well established in this circuit. In making that determination, a court must consider: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. As we have previously held, however, 'the four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required to support a grant of a preliminary injunction may depend on the strength of the other factors considered.'

Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994) (Internal citations omitted). As set forth herein, Plaintiff cannot satisfy the standard necessary for issuance of a preliminary injunction.

B. Plaintiff Cannot Establish Likelihood Of Success On The Merits

Plaintiff asserts that the citizenship requirement imposed for CCDW license eligibility constitutes a violation of the Fourteenth Amendment Equal Protection rights of resident aliens.

---

discussion of the citizenship provision occurred prior to passage.

Plaintiff further cites several state court decisions that have struck down weapons-related statutes concerning aliens on Equal Protection grounds, and argues that he is therefore likely to prevail on the merits. (See Plaintiff's Motion for Preliminary Injunction at page 4).

Commissioner Adams respectfully submits that the likelihood of Plaintiff prevailing on the merits is not sufficiently established by the limited number of decisions cited in Plaintiff's brief with respect to citizenship requirements for issuance of CCDW licenses to justify the issuance of a preliminary injunction. Conversely to the supportive state decisions cited by Plaintiff, other state courts have upheld constitutional challenges involving aliens with respect to firearms disabilities. See, e.g., State v. Vlacil, 645 P.2d 677 (Utah 1982) (rejecting constitutional challenges and affirming conviction of alien for firearm possession under state statute which criminalized possession of firearms by noncitizens); Washington v. Hernandez-Mercado, 879 P.2d 283 (Wash. 1994) (rejecting constitutional challenge on the record before it of alien convicted under state statute which criminalized unlicensed possession of firearms by noncitizens who had not declared intent to become a citizen). Moreover, a number of other states besides Kentucky contain citizenship requirements in their concealed carry statutes, which apparently have not been struck down (or apparently challenged). See e.g., Montana Code § 45-8-321; New Mexico Statutes Annotated § 29-19-4; North Carolina General Statutes Annotated § 14-415.12; South Dakota Codified Laws § 23-7-7.1.

Likewise, this Court should reserve its determination of the level of Equal Protection constitutional review to which Plaintiff's challenge is entitled until this matter can be fully briefed on the merits. In the Equal Protection context, the Supreme Court has held that its level of constitutional scrutiny is not as demanding in matters firmly within a state's constitutional prerogative. Foley v. Connelie, 435 U.S. 291, 295, 98 S.Ct. 1067, 1070, 55 L.Ed.2d 287, 296

(1978). The ability of Kentucky residents to carry concealed weapons is subject to laws imposed by the General Assembly in accordance with it authority under Section 1 of the Kentucky Constitution. See also Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 116 S.Ct. 2240, 2245 135 L.Ed.2d 700 (1996) ("Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens. Because these are 'primarily, and historically, ... matter[s] of local concern,' the 'States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'").

Accordingly, it is the position of Commissioner Adams that since the regulation of carrying concealed weapons is a matter left to the states, strict scrutiny Equal Protection review is inappropriate in this matter, and that the appropriate standard of review is rational basis. If rational basis review is deemed appropriate, then the citizenship provision of KRS 237.110 can only be struck down if it is determined that the provision "is not rationally related to any conceivable legitimate legislative purpose," and the statutory provision "will be afforded a strong presumption of validity and must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" Hadix v. Johnson 230 F.3d 840 ,843 (6th Cir. 2000).

Aside from the additional administrative burdens associated with IAQ NICS inquiries with respect to aliens as discussed above, there is also an additional issue that arises with respect to aliens and concealed deadly weapons that, under an "any conceivable legitimate purpose" standard of deferential review, would serve to justify the citizenship requirement in KRS 237.110. In Small v. United States, 544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005) the Court overturned the conviction of a defendant under 18 U.S.C. Section 922(g)(1) for possession

of firearms by a person convicted of an offense punishable by a term exceeding one year under circumstances where the defendant's prior conviction was for weapon's offense adjudicated under the laws of Japan. In so holding, the Court held that Section 922's prohibitions on weapons possession based upon prior criminal conviction applied only to domestic convictions. Id.

As a result of the holding of Small, and in the absence of legislative amendment by Congress, an alien with a foreign conviction equivalent to a felony under domestic law that would bar possession by a United States citizen, can lawfully possess firearms under federal law. See Small at 544 U.S. 405 ("[t]he majority's interpretation permits those convicted overseas of murder, rape, assault, kidnapping, terrorism, and other dangerous crimes to possess firearms freely in the United States.") (J. Thomas dissenting). Under KRS 237.110, an alien with a foreign conviction equivalent to a felony conviction under domestic law would still be able to obtain a CCDW license (assuming no other statutory disqualifiers were present) absent the citizenship requirement because KRS 237.110(4)(a) conditions eligibility on an applicant's ability to possess firearms under 18 U.S.C. § 922 and applicable state law.[2] For all of these reasons, Plaintiff cannot establish a likelihood of success on the merits, and the Court should therefore deny the Motion for Preliminary Injunction.

C.     Plaintiff Cannot Establish Irreparable Injury

Plaintiff's sole argument in support of his claim of irreparable injury in support of his request for a preliminary injunction is that the alleged violation of his Equal Protection rights *per*

---

[2] The Kentucky Penal Code bars possession of firearms by convicted felons. See KRS 527.040. However, the statute refers to felony convictions "as defined by the laws of the jurisdiction in which he was convicted, in any state or federal court." Id. The statute further references pardons for such felony offenses as being granted by the President, the Governor, or relief from conviction granted by the Secretary of the Treasury under the Federal Gun Control Act of 1968. Id. As such, the statutory language appears to be aimed at domestic convictions. Further, undersigned counsel are aware of no judicial decisions applying KRS 527.040 to foreign convictions.

*se* establishes irreparable injury. (See Plaintiff's Motion for Preliminary Injunction at page 5). However, in the Equal Protection context, a denial of Equal Protection rights for purposes of irreparable injury analysis may be more or less serious depending on the other injuries which accompany such deprivation. See Constructors Ass'n. of Western Pa. v. Kreps, 573 F.2d 811, 820, n. 33 (3rd Cir. 1978).

Here, Plaintiff is not being denied the right to own or possess firearms assuming he is otherwise qualified under federal law to possess firearms, and does not have a felony conviction that would bar his possession of firearms under KRS 527.040. Further, Plaintiff may openly carry firearms and other deadly weapons without a CCDW license, and may further transport deadly weapons in the glove box of a motor vehicle without a CCDW license as authorized by KRS 527.020(8). Any assertion under the circumstances that Plaintiff is being denied the right to self protection is speculative at best, and should not be found to constitute irreparable injury by this Court.

D. <u>The Issuance Of A Preliminary Injunction Will Cause Harm To Others And The Public Interest Does Not Favor The Issuance Of An Injunction</u>

As stated above, KSP is not presently in a position to conduct federal NICS IAQ background checks on alien applicants for a CCDW license. If the Court directs KSP to issue Plaintiff a license, unless and until computer programming updates are in place to effect such a background check, then the integrity of KSP CCDW program as a NICS exempt background check licensing state could be placed in jeopardy. As such, the ability of other license holders to use their CCDW license to purchase firearms without undergoing a telephonic NICS inquiry at the time of purchase may be called into question. For this reason, the issuance of an injunction could cause harm to KSP and other CCDW license holders.

Likewise, the public interest in granting Plaintiff injunctive relief in the form of immediate issuance of a CCDW license is negligible at best. As stated above, Plaintiff's ability to own and possess firearms and other deadly weapons in self protection has not been substantially impaired by the challenged provision of KRS 237.110. For all of the above-stated reasons, this matter should await determination once fully briefed on the merits, and the requested injunctive relief should be denied.

## CONCLUSION

For all of the foregoing reasons, Commissioner Adams respectfully requests that the Motion for Preliminary Injunction be denied.

Respectfully submitted,

s/ Roger G. Wright
Roger G. Wright
Justice & Public Safety Cabinet
Office of Legal Services
c/o of Kentucky State Police
919 Versailles Road
Frankfort, Kentucky, 40601
502-695-6345
(Fax) 502-573-1636
*rogerg.wright@ky.gov*, and

Stephen D. Lynn
Justice & Public Safety Cabinet
Office of Legal Services
c/o Department of Criminal Justice Training
Funderburk Building
521 Lancaster Avenue
Richmond, Kentucky 40475-3102
(859) 622-3073
(Fax) (859) 622-5027
*steve.lynn@ky.gov*

CERTIFICATE OF SERVICE

       I hereby certify that on August 7, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Jack B. Harrison.

                                               s/Roger G. Wright_____
                                               Counsel for Commissioner John (Jack) Adams