UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:07-CV-377-R

ALEXANDER M. SAY,                                                                                   PLAINTIFF

v.

JOHN ADAMS, ET AL                                                                                   DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff Alexander Say's Motion for Preliminary Injunction (Docket #4). Defendant has responded (Docket #8). Plaintiff has replied (Docket #9). The Attorney General of Kentucky was notified of this action (Docket #18), and the Court certified to him that there is a constitutional challenge to a state statute (Docket #19). The Attorney General notified the Court that he does not intend to intervene in this action (Docket #20). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Preliminary Injunction is GRANTED.

**BACKGROUND**

Plaintiff Alexander Say, a British National, is lawfully admitted into the United States for permanent residence. Plaintiff has been a resident of the Commonwealth of Kentucky without interruption since 1995. At the time the briefs were filed Defendant John Adams was the Commissioner of the Kentucky State Police, and Defendant John Aubrey was the Sheriff of Jefferson County.

Kentucky law authorizes the State Police to issue and renew licenses to carry a concealed deadly weapon ("CCDW license"). K.R.S. § 237.110(1). Applications for a CCDW license are obtained from the office of the sheriff in the county in which the applicant resides. K.R.S. §

237.110(7).  Under Kentucky law, only United States citizens are eligible to receive a CCDW license.  K.R.S. § 237.110(4)(b).

Prior to July 12, 2006, Kentucky did not require United States citizenship as a prerequisite for obtaining a CCDW license.  Defendants state that the purpose behind the citizenship requirement was to gain federal approval to allow a CCDW license holder to purchase a firearm without undergoing a telephone inquiry with the National Instant Criminal Background Check System ("NICS").  Defendants submit, upon information and belief, that the NICS background check, when conducted for a non-citizen, requires an "Illegal Alien Query" ("IAQ") conducted through the United States Immigration and Customs Enforcement to determine the alien's legal status within the United States.  The Kentucky State Police currently conducts a NICS check before granting a CCDW licence, but does not conduct an IAQ check.

On July 6, 2006, Plaintiff attempted to apply for a CCDW license.  A member of the Jefferson County Sheriff's Department told Plaintiff that he was not eligible for a CCDW license due to the change in Kentucky law.  Plaintiff claims that other than the citizenship requirement, he fulfills all other statutory requirements to obtain a CCDW license.

Plaintiff argues that the provision limiting CCDW permits to U.S. citizens violates the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff requests a preliminary injunction under F.R.C.P. 65(a) enjoining Defendants in their official capacities from enforcing the provision limiting the issuance of CCDW licenses to United States citizens.

**STANDARD**

In determining whether to issue a preliminary injunction, the court must consider: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant

would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

## DISCUSSION

### I. Likelihood of Success

Plaintiff argues that K.R.S. § 237.110(4)(b), which prevents non-citizens from obtaining a CCDW permit, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Ordinarily, a state law classification that "neither burdens a fundamental right nor targets a suspect class" will be upheld if the classification "bears a rational relation to some legitimate end." *Vacco v. Quill,* 521 U.S. 793, 799 (1997). "The general rule gives way, however, when a statute classifies by race, alienage, or national origin." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

When a state law targets a suspect class, the classification is subject to "strict scrutiny." The Supreme Court has held that "classifications by a State that are based on alienage are 'inherently suspect and subject to close judicial scrutiny." *Nyquist v. Mauclet*, 432 U.S. 1, 7 (1977) (citing *Graham v. Richardson*, 403 U.S. 365, 372 (1971).

While aliens are a suspect class, distinctions made between different classes of aliens are not subject to strict scrutiny. For example, "classification . . . based on the legality of the alien's

presence in the country under federal law (lawful permanent resident aliens vs. illegal aliens) and/or the length of time the federal government has authorized the alien to stay in the country (permanent vs. temporary)" is not a distinction that burdens a suspect class. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 531 (6th Cir. 2007).  However, K.R.S. § 237.110(4)(b) clearly makes a distinction between "citizens" and "aliens," and not merely subclasses of aliens.

Under Supreme Court and Sixth Circuit precedent, "lawful permanent residents are the only subclass of aliens who have been treated as a suspect class." *Bredesen*, 500 F.3d. at 533. The citizenship provision allows citizens to obtain a CCDW license, and prohibits all aliens, including lawful permanent residents, from obtaining a license.  On the basis of precedent binding on the Court, Plaintiff, as a lawful permanent resident of the United States, is entitled to the special protection afforded by strict scrutiny review.

"In undertaking this scrutiny, 'the governmental interest claimed to justify the discrimination is to be carefully examined in order to determine whether that interest is legitimate and substantial, and inquiry must be made whether the means adopted to achieve the goal are necessary and precisely drawn.'" *Nyquist v. Mauclet,* 432 U.S. 1, 7 (1977) (quoting *Examining Board v. Flores de Otero*, 426 U.S. 572, 605 (1976)).  In other words, classifications subject to strict scrutiny "are constitutional only if they are narrowly tailored to further compelling governmental interest." *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003). Additionally, under strict scrutiny, the defendant bears the burden to justify the suspect classification.  *Middleton v. City of Flint*, 92 F.3d 396, 404 (6th Cir. 1996).

Defendants state that the purpose behind the citizenship provision was to facilitate the

Kentucky State Police in conducting a background check that could replace the NICS background check conducted when a firearm is purchased.  Federally licensed firearms dealers are required to perform the instant NICS check before transferring any firearm.  18 U.S.C. § 922(t)(1).  There is an exception to the NICS background check requirement when the purchaser presents a permit issued by the state that meets certain federal requirements.  18 U.S.C. § 922(t)(3).

      Defendants have not satisfied their burden to show why this is a substantial state interest.  The Court cannot find that a state's interest in substituting a state background check for a federal background check is compelling enough to justify creating a classification that discriminates against a suspect class.

      Furthermore, the citizenship provision is not narrowly tailored to achieve this governmental interest.  A blanket prohibition discriminating against aliens is not precisely draw to achieve the goal of facilitating firearms purchases when there exists a nondiscriminatory way to  achieve the same goals.  As discussed below, if the Kentucky State Police undertakes some administrative burden, it is possible to allow permanent resident aliens to obtain a CCDW license, and still meet the requirements necessary to allow CCDW holders to avoid the NICS inquiry at the time of purchase.

      On the basis of the evidence and argument currently of record, the Court finds that, for the purposes of this motion, K.R.S. § 237.110(4)(b) discriminates against a suspect class, and is subject to strict judicial scrutiny. Applying strict scrutiny, the Court believes that the basis for the distinction between citizens and aliens submitted to the Court is not a compelling state interest, nor is the blanket prohibition narrowly tailored to achieve that end.  Therefore, the Court finds

that Plaintiff has established a strong likelihood of success on the merits.

## II. Irreparable Injury

"Courts have . . . held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). "[I]t is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). Other courts have found irreparable injury in other constitutional violations. *See Covinno v. Patrissi*, 967 F.2d 73,77 (2nd Cir. 1992) (violation of the Fourth Amendment); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (violation of the right to privacy). Therefore, the Court finds that the violation of the Equal Protection Clause qualifies as an irreparable injury, especially when consider in light of Plaintiff's likelihood of success on the merits.

## III. Harm to Others

The Court must also examine any substantial harm to others that would occur if a preliminary injunction is granted. If the Kentucky State Police issues a CCDW license to Plaintiff without conducting an IAQ check, Defendants believe the use of a CCDW license as a replacement for the NICS background check will be placed in jeopardy. This would mean that CCDW license holders may have to undergo a telephonic NICS criminal history check when purchasing a firearm.

Additionally, the Kentucky State Police could also be injured by the granting of a temporary injunction. Protecting the ability of current CCDW license holders to use their license

in place of a telephonic NICS inquiry would impose additional administrative burdens on the Kentucky State Police.  It may be required to conduct a manual case-by-case background check on alien CCDW applicants.  Additionally, Defendants state that the Kentucky State Police will have to update its electronic database software, amend its forms, and change its record check procedures.

While the granting of the injunction will potentially harm the Kentucky State Police by increasing its administrative burden, and potentially harm current CCDW licence holders by requiring them to undergo a NICS background check when purchasing firearms, this harm is outweighed by Plaintiff's likelihood of success on the merits and the harm to Plaintiff if an injunction is not granted.  Under the facts before the Court, any harm to others caused by the granting of a preliminary injunction is not substantial enough to justify the violation of Plaintiff's constitutional rights.

**IV. The Public Interest**

Defendants assert that the public interest in immediately granting the injunction is negligible at best.  However, Plaintiff is asserting a violation of the Equal Protection Clause. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**V. Balancing of Factors**

Upon examination of all four factors, the Court finds that a temporary injunction is appropriate in this case.  Case law establishes that lawful permanent residents are a suspect class, and therefore entitled to the special protection afforded by strict scrutiny.  While both the Kentucky State Police and current CCDW license holders would be affected by the injunction,

the potential harm in granting the preliminary injunction is not substantial enough to outweigh the other relevant factors.   Plaintiff has demonstrated a strong likelihood of success on the merits of his equal protection claim. Additionally, Plaintiff has made a strong showing that his constitutional rights have been violated, which is considered to be an irreparable harm. Finally, it is in the public interest to prevent the violation of an individual's constitutional rights.

## CONCLUSION

For the above reasons, Plaintiff's Motion for Preliminary Injunction is GRANTED.

An appropriate order shall issue.